UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

KELLY SUE SANFORD,                  ]
                                    ]
     Plaintiff,                     ]
                                    ]
vs.                                 ]   6:06-CV-01496-LSC
                                    ]
CITY OF JASPER, ALABAMA, et al.,    ]
                                    ]
     Defendants.                    ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment (Doc. 30), filed by Officer Mitchell Jones and the City of Jasper, Alabama ("Defendants"), and a motion for partial summary judgment (Doc. 33), filed by Kelly Sue Sanford ("Plaintiff" or "Sanford").  Plaintiff filed her Complaint in this Court on July 28, 2006.  (Doc. 1.)  In her Complaint, Sanford alleged that the City of Jasper, Officer Mitchell Jones, Officer David Trotter, Chief Robert Cain, and Mayor Sonny Posey violated her constitutional right to be free from unlawful seizure under 42 U.S.C. § 1983 ("§ 1983") and Alabama state law prohibiting false arrest/imprisonment.  Plaintiff subsequently

dropped all claims against Officer Trotter, Chief Cain, and Mayor Posey, as well as her § 1983 claim against the City of Jasper. Defendants have moved for summary judgment on Plaintiff's remaining § 1983 claim against Officer Jones and state law false arrest claim against Officer Jones and the City of Jasper. Sanford has moved for summary judgment on her § 1983 claim against Officer Jones. The issues raised in both motions for summary judgment have been briefed by the parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented, Defendants' motion will be granted and Plaintiff's motion will be denied.

II.   Facts.[1]

On July 31, 2004, Jasper police officer Mitchell Jones made a traffic stop because a car was weaving in the road and Officer Jones suspected the driver was under the influence. Dustin Howell ("Howell"), the driver, was subsequently arrested for DUI. The plaintiff, Kelly Sue Sanford, a passenger

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

in the vehicle, was arrested for public intoxication. Sanford's account of the traffic stop and her arrest, however, differs from that of Officer Jones.

According to Sanford, on the evening of July 31, 2004, she was at O'Malley's, a bar where her brother was competing in a pool tournament. She testified that in the approximately three hours that she was at the bar, she drank only a portion of a "Stumbling Islander," a mixed drink served in an "itty bitty Dixie cup," earlier in the evening. Around 12:30 in the morning, she threw up more than once; Sanford says the sweetness of the drink made her ill because she is diabetic. Although her brother left at 12:30, Sanford stayed at the bar with her friend, Howell. Around one o'clock in the morning, she and Howell left the bar together to go to a hotel room. Howell drove Sanford's car, and Sanford rode in the passenger seat. Sanford did not notice the blue lights of the police car pulling them over; she only remembers Howell cussing.

When Officer Jones made the traffic stop, he did not see a passenger in the vehicle. Officer Jones testified that as he approached the driver's door, however, he saw another person raise up out of the driver's lap, and he noticed that the driver's pants were pulled down. According to Jones,

the smell of alcohol was coming from the vehicle, and the driver told him that they had been at O'Malley's bar.

Sanford denies Officer Jones' testimony that her head was anywhere near the driver's lap. She says that her head was on Howell's shoulder because she was sick. Sanford testified that she leaned out of the car and threw up one more time while Howell was being arrested.[2] She says that when she looked in the side view mirror, she believed she saw Officer Jones waving her out of the car, and she got out of the vehicle.

According to Officer Jones, he was approaching the passenger door after arresting Howell when Sanford stepped out of the car of her own volition and asked him about Howell and whether the car would be impounded. He could smell alcohol on her breath and about her person, and he asked her if she had anything to drink. Officer Jones testified that Sanford stated she had been drinking at the bar, but he cannot recall now if she said how many drinks she had. Though he is "sure" she was "unsteady on her feet" and "slurred her speech," Officer Jones could not remember

---

[2]According to Officer Jones, Howell blew a 0.14 on the portable breathalyzer and said he was too drunk to perform a field sobriety test.

those details for certain at his September 6, 2007, deposition. Officer Jones did testify that Sanford did not give him any problems, and she did not stumble or fall. He does not remember if he gave Sanford a breathalyzer test. He placed her under arrest for public intoxication, noting her proximity to the public roadway and the fact that he determined she should not drive her car.

Sanford testified that she told Officer Jones that she had half a drink two or three hours earlier. She says he gave her a portable breathalyzer test and told her she blew a 0.03. A post-arrest search of Sanford's purse resulted in two charges of unlawful possession of a controlled substance and one charge for possession of drug paraphernalia. She is fighting the criminal charges.

III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

    Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d

1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

   A.   Section 1983 Claim.

Plaintiff's § 1983 claim alleges Officer Jones violated her Fourth Amendment right to be free from unlawful search and seizure. Officer Jones contends that summary judgment should be granted in his favor because he is entitled to qualified immunity. Plaintiff argues that the undisputed facts establish Officer Jones's liability.

When issues of qualified immunity are raised in cases like this,[3] "courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the

---

[3]In this case, it is undisputed that Officer Jones was acting within the scope of his discretionary authority when he arrested Sanford. (Doc. 35 at 3.)

right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). "Although this ordering contradicts [the] policy of avoiding unnecessary adjudication of constitutional issues, [the U.S. Supreme Court has] said that such a departure from practice is necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established." *Id.* (quotations and citations omitted).

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)). However, even if an arrest is made without probable cause, an officer is "entitled to qualified immunity if there was arguable probable cause for the arrest." *Id.* (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)). "Accordingly, we must inquire whether 'reasonable officers in the same circumstances and possessing the same knowledge as [Officer Jones] could have believed that probable cause existed to arrest Plaintiff . . . .'" *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). Sanford "must demonstrate

that no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)).

Plaintiff argues that the only information Officer Jones could base her arrest on was the fact that she said she had been drinking, and she told him she had less than one drink two or three hours earlier. (Docs. 35 at 5; 38 at 4.) Alabama Code Section 13A-11-10 provides that "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Officer Jones admits that Sanford was neither boisterous nor offensive. However, Plaintiff contends that the undisputed facts show Officer Jones had no reason to believe Sanford was actually intoxicated or a danger to herself or others.[4]

---

[4]In her opposition to Defendants' motion for summary judgment, Sanford does not raise the legal argument that she was not "in a public place," as required by § 13A-11-10. (Doc. 38.) Moreover, in her brief in support of her own motion for summary judgment, Plaintiff states that the "'in a public place' element is assumed for this motion." (Doc. 35 at 5 n.1.) Therefore, it is unnecessary for the Court to address this issue.

Upon a thorough review of the record, the Court finds that there is sufficient evidence to support a reasonable officer's belief that probable cause existed to arrest Sanford for public intoxication. Officer Jones testified that when he made the traffic stop, the smell of alcohol was coming from inside the vehicle. He knew that both passengers had just come from a bar. Officer Jones also smelled alcohol on Sanford's breath and about her person. Plaintiff admitted that she was so sick she had to prop her head on the driver's shoulder, and Officer Jones saw that Sanford was leaning or laying on the driver when she was in the vehicle. Sanford, herself, testified that she threw up on the ground outside the car before she got out. Moreover, Plaintiff had evidently already made decisions that endangered herself and others. Namely, Sanford allowed Howell—who blew a 0.14 on a portable breathalyzer—to drive her vehicle in an intoxicated state, and she made herself his passenger. Given the totality of these circumstances, as they were apparent to Officer Jones, it was objectively reasonable for him to conclude that Sanford was intoxicated to the degree that she endangered herself or others. Therefore, there is insufficient evidence that Officer Jones violated Plaintiff's Fourth Amendment rights.

Even if Sanford had established a violation of a constitutional right, she has failed to show that Officer Jones is not entitled to qualified immunity. "[T]he purpose of the qualified immunity doctrine is to give meaning to the proposition that '[g]overnment officials are not required to err on the side of caution' when it comes to avoiding constitutional violations." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (citing *Crosby v. Monroe*, 394 F.3d 1328, 1334 (11th Cir. 2004) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (en banc))). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Defendants, in their individual capacities, are entitled to qualified immunity unless their 'supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Id.* (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

Plaintiff has "the burden of demonstrating that [Officer Jones]—at the pertinent time and given the specific circumstances of this case—had fair

notice that [his] conduct would violate clear federal law." *Id*. (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). "To demonstrate that the law at the time clearly established that [Officer Jones's] conduct would violate the Constitution, [Plaintiff] might point to either (1) earlier case law from the Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest court of [Alabama] that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of [Officer Jones's] conduct." *Id*. (citing *Marsh*, 268 F.3d at 1031-33 & nn. 9-10; *Willingham v. Loughnan*, 321 F.3d 1299, 1301-03 (11th Cir. 2003); *Vinyard*, 311 F.3d at 1349-53). "And 'where the applicable legal standard is a highly general one, such as "reasonableness," preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law.'" *Id*. (quoting *Thomas v. Roberts*, 323 F.3d 950, 954 (11th Cir. 2003)).

Because Sanford cannot cite to any "controlling or materially similar case law" that establishes Officer Jones violated her Fourth Amendment rights, she appears to argue that this is an "obvious clarity" case without actually writing the words "obvious clarity." (Doc. 35 at 6-7.) This is simply not an instance, however, where the words of the provision at issue "are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 1350. Officer Jones is entitled to qualified immunity with regard to Sanford's § 1983 claim, and Plaintiff's motion for summary judgment on the same issue must be denied.

B.   Alabama State Law Claim.

Plaintiff also asserts a "false arrest" state law claim against Officer Jones and the City of Jasper. Defendants maintain that Officer Jones is entitled to discretionary function immunity pursuant to Alabama Code § 6-5-338, and the City of Jasper is likewise immune.

"As a police officer, [Officer Jones] qualifies as a peace officer for purposes of § 6-5-338." *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003). "It is also undisputed that at all times during the incident in question [Officer Jones] was acting within his capacity as a police officer of

the City [of Jasper]." *Id.* "To come within the protection of § 6-5-338, a municipal police officer must be engaged in a discretionary function with respect to the incident in question." *Id.* (citing *Ex parte City of Montgomery*, 758 So. 2d 565 (Ala. 1999); *Ex parte Duvall*, 782 So. 2d 244 (Ala. 2000)).

"Generally, arrests and attempted arrests are classified as discretionary functions." *Id.* (citing *Telfare v. City of Huntsville*, 841 So. 2d 1222 (Ala. 2002)). "'Discretionary functions' are broadly defined as 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" *Id.* (quoting *Ex parte Duvall*, 782 So. 2d at 248).

The gist of Plaintiff's argument in opposition to summary judgment on this issue appears to be that Officer Jones was not engaged in a discretionary function because his arrest was not lawful because he lacked arguable probable cause for her arrest. (Doc. 38 at 5 (citing *Borders*, 875 So. 2d at 1180).) This Court addressed the issue of arguable probable cause in the preceding section, and its analysis is the same here. There is

sufficient evidence to support a reasonable officer's belief that probable cause existed to arrest Sanford for public intoxication, and Officer Jones is entitled to discretionary function immunity on Plaintiff's state law claim.

Since Sanford's remaining claim against the City of Jasper is one founded on the theory of vicarious liability, Officer Jones's entitlement to discretionary function immunity means "the municipality likewise is immune as to claims based on the employee's conduct." *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1131 (Ala. 2000).

V.   Conclusion.

For the reasons stated above, Plaintiff's motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted in all respects. A separate order will be entered.

Done this 28th day of May 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297